OPINION
{¶ 1} Plaintiffs-appellants Jerry K. Kohl, et al. appeal the April 26, 2005 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, General Trial Division, which granted summary judgment in favor of defendant-appellee National City Bank ("NCB").
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Jerry Kohl ("Kohl"), a longtime miner/real estate developer, owns approximately 700 acres of reclaimed strip-mined land in Tuscarawas County. In 1999, Kohl approached Tuscarawas County officials about a proposed development which would include an eighteen-hole championship golf course, a hotel and conference center, and a surrounding planned community. The project became known as the Mines Project. Prior to conceiving the Mines Project, Kohl borrowed money from NCB for other ventures. NCB loaned Kohl $65,000 on June 6, 1997, and an additional $325,000 on November 14, 1997. These loans were secured by mortgages on real estate owned by Kohl, which subsequently became property he designated for the Mines Project.
 {¶ 3} In 2000, the Tuscarawas County Commissioners voted to create a political subdivision entity, the Tuscarawas County Port Authority ("Port Authority"), for the sole purpose of developing the Mines Project. The Port Authority was to issue and sell revenue bonds in order to purchase real estate for the project. Kohl anticipated selling approximately 320 acres of his own property to the Port Authority. Through the sale proceeds of the bonds, the Port Authority would also construct the golf course and hotel/conference center. Kohl planned to develop the surrounding property for residential use by himself individually, through his own companies, appellants Gemini and Blackhawk, or by selling portions of the property to third party developers.
 {¶ 4} In December, 2001, the Port Authority retained National City Investments ("NCI"), a sister company of NCB and a defendant in the underlying case, to assist in the sale of the municipal bonds to fund the Mines Project. NCI was to be compensated primarily based upon whether there was a successful bond issuance. NCB was listed on multiple documents, including the revenue bond issuance contract, as the trustee. These documents were drafted by the law firm representing the Port Authority. NCI recommended to the Tuscarawas County Commissioners the County serve as a guarantor of the bonds in order to make the bonds more marketable. NCI advised the Commissioners the County could walk away from the project after one year; therefore, not have to appropriate additional funds. In a letter dated June 27, 2002, the Commissioners acknowledged their support of the project.
 {¶ 5} Kohl defaulted on the two 1997 NCB loans in April, 2002. In September, 2002, the handling of the loans was transferred to the Special Assets Department of NCB for collection. Kohl received a demand letter on September 23, 2002. In response, Kohl directed his agent to contact NCI to determine whether NCI could assist in getting NCB to postpone taking action on the loans. NCI contacted Ken Sigurdsen in the Special Assets Department of NCB, and explained NCI was working with the Port Authority and Kohl on a bond issuance, and if the bond financing went through Kohl's property would be purchased and funds would be available to pay the NCB debt. NCB agreed to forbear collection activity based upon a desire to help its customer and its sister company, NCI, and the fact NCB's debt was fully secured by the mortgages.
 {¶ 6} In December, 2002, the Commissioners voted 2 to 1 to act as guarantor for the bonds. Because the vote was not unanimous, it was insufficient for the sale of the bonds due to the realities of the marketplace. The bonds were never sold. As a result, the Mines Project dissolved.
 {¶ 7} Thereafter, NCI contacted Sigurdsen in the Special Assets Department of NCB to inform him the project would not be funded; therefore, would not provide a source of repayment for Kohl's NCB loans. Kohl and NCB discussed a further forbearance period. In March, 2003, Sigurdsen wrote a letter to Kohl, outlining the terms of the further forbearance. The deal required Kohl to make both loans current by paying interest and principle arrearages, and to pay the loan balances in full by July 15, 2003. Kohl made the payments to get the loans current in March, 2003, but failed to pay the balances due by July 15, 2003.
 {¶ 8} On July 11, 2003, appellants filed a Complaint in the Tuscarawas County Court of Common Pleas, General Trial Division, naming NCB and NCI as defendants. Appellants asserted claims of promissory estoppel and bad faith against NCB; and claims of promissory estoppel and negligent misrepresentation against NCI. NCB and NCI filed respective motions for summary judgment. Appellants filed responses in opposition thereto. Via Judgment Entry filed April 26, 2005, the trial court granted NCB's motion and dismissed appellants' claims against it. The trial court denied NCI's motion for summary judgment.
 {¶ 9} It is from that judgment entry appellants appeal, raising as error:
 {¶ 10} "I. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF NCB AND AGAINST APPELLANTS."
 STANDARD OF REVIEW {¶ 11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212.
 {¶ 12} Civ.R. 56(C) states, in pertinent part:
 {¶ 13} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 14} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing Dresherv. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.
 {¶ 15} It is based upon this standard we review appellants' assignment of error.
 I {¶ 16} Herein, appellants maintain the trial court erred in granting summary judgment in favor of NCB on the claims of promissory estoppel and bad faith. We disagree.
 {¶ 17} To make a prima facie case for promissory estoppel, appellants must show: (1) a clear and unambiguous promise; (2) reliance upon the promise; (3) reliance that is both reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise. Imbrogno v. Mimrx.com,Inc., Franklin App. No. No. 03AP-345, 2003-Ohio-6108, citing,Weiper v. W.A. Hill Assoc. (1995), 104 Ohio App.3d 250, 260.
 {¶ 18} Appellants submit genuine issues of material fact exist with regard to NCB's conduct. Appellants refer to NCB's actions after Kohl informed the Port Authority and NCI he was considering pulling out of the Mines Project in June, 2002. Thereafter, in September, 2002, NCB referred the loans to its Special Assets Department for collection. Throughout September and October, 2002, NCI repeatedly told Kohl the bond financing was certain and imminent. As such, Kohl continued to work on the project and expend money thereon. Appellants submit NCB was a concerted participant in NCI's conduct as NCB timed its demand on the loans to coincide with NCI's exerting pressure on Kohl to continue work on the project as well as NCI's ongoing misrepresentations about the imminence of the bond financing.
 {¶ 19} In further support of their position, appellants point to the testimony of Ken Sigurdsen of the Special Assets Department who was appointed to the account. Sigurdsen stated NCB was not going to file suit against Kohl when NCI was in the middle of putting a deal together. Sigurdsen added NCB went longer on the loans than it normally would have because NCB thought a payoff was coming. Appellants conclude the timing of NCB's loan demand, NCI's representations, and NCB's subsequent forbearance create a genuine issue of material fact as to the promise element.
 {¶ 20} When Kohl defaulted on the loans, he approached NCI and requested it to intervene with NCB in order to obtain a forbearance on the loans. NCI did so, and based upon the pending deal as well as its affiliation with NCI, NCB agreed to a forbearance. There was absolutely no contact between Kohl and NCB regarding the work on the Mines Project. Appellants stress NCB and NCI were working in concert as NCB's name appears on documents relating to the Mines Project, and NCB could potentially earn fees from the project. However, there is no record evidence to indicate NCB knew of or acquiesced to it being referred to on the documents as "Trustee". These documents were drafted by the law firm representing the Port Authority, not NCB or NCI. Kohl's reliance upon NCB's promise to forbear as reason to continue to spend money on developing the project was unreasonable. There is no evidence of a clear and unambiguous promise by NCB to forbear in exchange for Kohl's continued work on the project. It was also unreasonable for Kohl to rely upon NCB's forbearance as an agreement to never attempt to collect the loans as the forbearance agreements set forth specific time periods and the concrete written terms of the loan agreements clearly indicate otherwise.
 {¶ 21} Accordingly, we overrule appellants' assignment of error as it relates to the promissory estoppel claim. We now turn to appellants' bad faith claim.
 {¶ 22} "A lender's decision to enforce the terms of a written agreement cannot be considered to be acting in bad faith."Bankers Trust Co. ex rel. Salomon Bros. Mortg. Securities VII,Inc. v. Harry H. Wagner Son, Inc. Allen App. Nos. 1-01-17, 1-01-18, 10-1-19, 1-01-20,101-21, 1-01-22, 1-01-23, 1-01-24, 1-01-25, 1-01-26, 1-01-28, 1-01-29, 1-01-30, 1-01-31, 1-01-32, 1-01-33, 1-01-34, 1-01-35, 1-01-36, 1-01-37, 1-01-38, 1-013-9, 1-01-40, 2001-Ohio-2276, citing, Ed Schory Sons v. Soc. Natl.
(1996), 75 Ohio St.3d 433, 443.
 {¶ 23} Generally, the relationship between a creditor and debtor is not a fiduciary one, but is one governed by freedom of contract. Stone v. Davis (1981), 66 Ohio St.2d 74, 78. A fiduciary relationship exists when a "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." Id., quoting In reTermination of Employment (1974), 40 Ohio St.2d 107, 115. Such a relationship arises out of an informal relationship where "both parties understand that a special trust or confidence has been reposed." Id. at 78. For the most part, even if a creditor gives business advice, the business relationship does not convert to a fiduciary relationship. Needham v. The Provident Bank (1996),110 Ohio App.3d 817, 829 (Citations omitted).
 {¶ 24} Kohl contends NCB was not merely enforcing its debt. Rather, Kohl asserts, as a participant in the project as the trustee, NCB timed its actions and engaged in a campaign with NCI to coerce and influence Kohl to continue funding the project with the hopes of a huge payoff for both NCI and NCB. Kohl notes NCB held a position of superiority and influence over Kohl. The record reveals NCB's relationship with Kohl was based solely upon the loans he obtained from NCB, which were unrelated to the Mines Project at the times the loans were made. The fact NCB was named trustee of the bond issuance and stood to earn a fee does not change the relationship between it, as a creditor, and Kohl, as a debtor, into a fiduciary one. Further, the fact NCB did not take immediate action in April, 2002, when Kohl defaulted on the loans, but waited until September, 2002, does not constitute bad faith.
 {¶ 25} We find appellants have failed to establish the genuine issue of material fact exists as to the claim of bad faith. Accordingly, we find the trial court did not error in granting summary judgment on this claim.
 {¶ 26} Appellants' sole assignment of error is overruled. The judgment of the Tuscarawas County Court of Common Pleas is affirmed.
By: Hoffman, J., Wise, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellants.