U.S. BANK NATIONAL ASSOCIATION, Trustee, Appellee,

v.

MOBILE ASSOCIATES NATIONAL NETWORK SYSTEMS, INC. et al., Appellants.

[Cite as *U.S. Bank Natl. Assn. v. Mobile Assoc. Natl. Network Sys., Inc.*, 195 Ohio App.3d 699, 2011-Ohio-5284.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 11AP–155.

Decided Oct. 13, 2011.

Miller, Canfield, Paddock & Stone, P.L.C., James L. Allen, and Megan B. Odell, for appellee.

McNees Wallace & Nurick, L.L.C., Samuel N. Lillard, Brett E. Younkin, and Anthony D. Dick, for appellants.

TYACK, Judge.

{¶ 1} This is a commercial foreclosure appeal involving four manufactured-home parks located in Franklin and Pickaway Counties. Plaintiff-appellee is U.S. Bank National Association, Trustee, successor in interest to Bank of America, N.A., as successor by merger to LaSalle Bank National Association, in its capacity as trustee for the registered holders of LB–UBS Commercial Mortgage Trust 2006–C7, Commercial Mortgage Pass–Through Certificates, Series 2006–C7 (the "bank"). Defendants-appellants are Mobile Associates National Network Systems, Inc., Gregory Park Ashville, L.L.C., Westbrook Park Columbus, L.L.C., and Byway Park Columbus, L.L.C. (collectively, the "Parks").

{¶ 2} The Parks entered into a commercial mortgage loan agreement with UBS Real Estate Investments, Inc., in the amount of $8 million on June 7, 2006. The Parks made regular monthly payments on the note through September 2008. Then the Parks failed to make payments in October and November 2008.

{¶ 3} On September 29, 2008, Justin Mann, the self-described chief operating officer of the Parks, sent an e-mail to Wachovia Bank, the servicer of the loan, to request a forbearance of four to six months. Ten minutes later, Crystal Edwards at Wachovia Bank (who serviced the loan) replied by e-mail that she needed documentation and a letter outlining the reason for the forbearance and how Martin planned to keep the loan current. Mann testified that he was led to

believe that a forbearance would be negotiated and granted and that formal paperwork would follow. Mann admitted that he had not actually obtained a forbearance before he failed to make the payments for October and November 2008. After the second missed payment, the loan was transferred to CW Capital Asset Management, L.L.C. ("CW Capital") for servicing on November 13, 2008. On November 17, Monique Holland, senior asset manager for CW Capital, attempted to reach Mann by telephone. This was followed by an e-mail on November 18, 2008, asking Mann to speak to her right away, as she was in the process of retaining counsel.

{¶ 4} In a letter dated November 21, 2008, the Parks and CW Capital entered into an agreement to negotiate concerning the obligations owed to the lender by the borrower. In the written agreement, the Parks acknowledged that they had defaulted on the loan by virtue of the missed payments in October and November. The parties agreed that the loan documents were in full force and effect and that the lender was under no obligation to modify any of the loan documents or enter into any form of agreement with the borrower. Further, the agreement stated that "[n]othing contained herein shall limit [the lender from] initiating, continuing or otherwise proceeding to exercise any right or remedy available to [the lender] under the Loan Documents." The parties also agreed that there had been no modifications to the loan documents and that "no agreement reached with respect to any matter (whether prior to the date hereof or hereafter * * *) shall have any effect whatsoever unless such agreement is reduced to writing." The Parks also agreed to produce certain financial documents relating to the properties. Additionally, the original note and mortgage also contained clear language that they could not be modified except by a signed writing.

{¶ 5} The parties never reached a written agreement for a loan modification or a forbearance on the monthly payments. Holland testified that she did not agree to forbear or otherwise modify the terms of payment, in part because Mann had told her that cash flow from the Parks had been diverted for use for other properties and because she never received the documents she needed to consider a request for forbearance. Although Mann denied that he had made any such statement regarding diversion of property funds, the trial court found Holland to be a very credible witness.

{¶ 6} On or about December 4, 2008, the Parks made a monthly payment of $69,026.63. On December 17, 2008, the bank accelerated the maturity of the loan and demanded full payment in ten days. In January and February 2009, the Parks made payments of $71,531.27 that were also cashed.

{¶ 7} On February 18, 2009, the bank filed its complaint and a request for the appointment of a receiver. The Parks contested the foreclosure, claiming that the bank should be estopped from proceeding to foreclosure because the note and

mortgage had been modified by an oral agreement for forbearance. At trial, Mann testified that he had been led to believe there would be negotiations in the future.

{¶ 8} Even as late as May 21, 2009, Mann was communicating the following to Holland:

I am trying to line up investors to partner with me to solve this problem, but I need some cooperation on the part of CW Capital and or it's [sic] legal Counsel. That is all we are asking for. With that said, it would help if we could see monthly financial reports and the property condition report.

{¶ 9} Holland replied as follows:

To set the record straight, we are proceeding with foreclosure. * * * If you have a new proposal or a request, we can surely consider it[,] but at this point you should be submitting any requests through your attorney to my attorney.

{¶ 10} On July 6, 2009, counsel for the Parks filed a motion for leave to file their answer to the foreclosure complaint instanter. In the memorandum in support, the following representation was made:

Prior to the initiation of this action, the parties were engaged in negotiations to resolve their disputes and had made significant progress toward that end. Following the filing of Plaintiff's Complaint, Defendants continued to attempt to negotiate a resolution to the matters now before the Court.

* * *

Again, Defendants have been attempting to reasonably resolve the dispute with the Plaintiff which has resulted in a temporary impasse. Accordingly, the Defendants respectfully request leave to file their Answer instanter.

{¶ 11} After the trial court denied the bank's motion for summary judgment, the matter was tried to the bench on December 1, 2010. The trial court ruled in favor of the bank. The trial court held that there was no oral or written forbearance or modification of the loan, that Mann's hope or expectation of a favorable response to his requests for forbearance was not mutual assent as a matter of law, and that his requests were not sufficient to create an oral modification to the payment terms of the contract. The trial court also held that the bank was within its rights to act in its own self-interest and that nothing in the loan documents or the prenegotiation agreement prohibited the bank from acting in its own self-interest.

{¶ 12} On January 14, 2011, the trial court entered a judgment and decree of foreclosure. The Parks requested a stay of foreclosure upon posting a nominal bond. The bank opposed the motion, and the trial court ultimately set the bond for a stay at $5,074,000. On April 25, 2011, this court refused to lower the bond as requested by the Parks. The properties were sold at sheriffs' sales in

Franklin and Pickaway Counties on May 13 and April 25, 2011, respectively. The trial court entered final orders confirming the sales on June 9, 2011. The Parks did not appeal from those orders.

{¶ 13} The Parks appealed from the judgment of foreclosure, assigning the following as error:

[I]. The trial court erred by not estopping plaintiff from proceeding to foreclosure on the subject property after plaintiff willfully breached the contract that expressly prohibited such action.

[II]. The trial court's decision should be reversed in the event that the prenegotiation agreement is found to be unenforceable because of the court's one-sided reliance on the terms admitting to a breach of the loan as a condition to negotiations with appellee.

[III]. The trial court erred by failing to recognize that appellee, in its purported capacity as trustee of the 2006–C7 Trust, had failed to show that it was the proper party to enforce the loan agreement.

{¶ 14} The bank has filed a motion to dismiss on grounds of mootness. The bank contends that the appeal must be dismissed as moot because the confirmation of sale has resulted in irrevocable disposal of the property and distribution of funds and, therefore, the Parks are without a remedy.

{¶ 15} The Parks argue that R.C. 2329.45[1] is designed to protect purchasers who took the property in good faith and without notice of the possibility that the land was still the subject of an ongoing dispute. The Parks contend that in this case, ownership or substantial control of the properties has remained with the bank and that the bank has not acted in good faith.

{¶ 16} This court has recognized that there is a split of authority as to the mootness issue when property has been sold and the proceeds distributed. *Everhome Mtge. Co. v. Baker*, 10th Dist. No. 10AP–534, 2011-Ohio-3303, 2011 WL 2586751, ¶ 12, citing *Charter One Bank, F.S.B. v. Mysyk*, 11th Dist. No. 2003–G–2528, 2004-Ohio-4391, 2004 WL 1872771, ¶ 4 ("Once the Sheriff's sale occurred, the merits of the trial court's foreclosure order became moot. * * * No relief can be afforded once the property has been sold at foreclosure sale because an appellate court is unable to grant any effectual relief at that point").

{¶ 17} Similarly, in *Bankers Trust Co. of California, N.A. v. Tutin*, 9th Dist. No. 24329, 2009-Ohio-1333, 2009 WL 763994, the property was sold at a sheriff's sale, and the trial court confirmed the sale.

---

1.  R.C. 2329.45 provides: "If a judgment in satisfaction of which lands, or tenements are sold, is reversed, such reversal shall not defeat or affect the title of the purchaser. In such case restitution must be made by the judgment creditor of the money for which such lands or tenements were sold, with interest from the day of sale."

{¶ 18} The party who had a life estate in the property moved to have the trial court order Bankers Trust to return the funds to the sheriff's department. Id. at ¶ 7. Bankers Trust moved to dismiss the underlying appeal on the grounds of mootness, the proceeds of the sheriff's sale having been distributed. The court dismissed the appeal, reasoning that once the property had been sold, title had transferred to a third party, and the proceeds of the sale had been distributed, a successful appellant no longer had a remedy. Id. at ¶ 16.

{¶ 19} Other courts have taken the position that R.C. 2329.45 preserves the remedy of restitution, even after the property has been sold at sheriff's sale and the proceeds distributed. See, e.g., *LaSalle Bank Natl. Assn. v. Murray*, 179 Ohio App.3d 432, 2008-Ohio-6097, 902 N.E.2d 88; *Ameriquest Mtge. Co. v. Wilson*, 11th Dist. No.2006–A–0032, 2007-Ohio-2576, 2007 WL 1535242; *Chase Manhattan Mtge. Corp. v. Locker*, 2d Dist. No. 19904, 2003-Ohio-6665, 2003 WL 22927244. Ohio courts have recognized that even where the real property itself is no longer recoverable, the case is not moot, because the court is not without power to offer a remedy. "[D]ebtors may still obtain relief in the form of restitution from judgment creditors. Restitution is appropriate in cases such as these, where the foreclosed property has been sold." *Ameriquest Mtge. Co.* at ¶ 19.

{¶ 20} Some districts have explicitly held that a foreclosure action is moot where no stay has been requested. See *U.S. Bank Natl. Assn. v. Marcino*, 7th Dist. No. 09 JE 29, 2010-Ohio-6512, 2010 WL 5550678, ¶ 14 and cases cited therein. In this case, the Parks requested a stay but were unable to post the $5,074,000 bond.

{¶ 21} In *Everhome Mtge. Co.*, this court cited with approval *Ameriquest Mtge. Co.*, finding that the reasoning in that case is more persuasive than the broader application of mootness found in *Mysyk*.

{¶ 22} This court stated:

It is a suspect argument to assert that a void, voidable, or merely erroneous judgment might evade appellate review simply because it was rendered rapidly, completely, and without notice. If we test the *Mysyk* rule by taking it to its logical extreme, such a holding would allow no recourse in a case in which a foreclosure action proceeded, completely in error and without any notice to the property owner, from complaint to default to foreclosure and sale. Admittedly, * * * that is not the posture of the present case, but adopting mootness as a rule of convenience here would invite injustice in ˙future cases presenting harsher facts.

Id., 2011-Ohio-3303, at ¶ 14.

{¶ 23} Following in the footsteps of *Everhome Mtge. Co.*, we conclude that the matter is not moot, because restitution remains a viable remedy, particularly

in light of the Parks' argument that the purchasers of the properties are straw purchasers created and controlled by the bank.

{¶ 24} The motion to dismiss the appeal as moot is denied.

{¶ 25} We turn now to the Parks' first assignment of error. The Parks characterize the letter agreement as a binding written contractual agreement that modified the loan by requiring the parties to engage in negotiations. The Parks contend that the bank failed to engage in any negotiations, thereby breaching the alleged modification. The Parks argue that until the bank negotiated, it should have been estopped from foreclosing or taking any further action.

{¶ 26} The Parks' argument is flawed for several reasons. First, the issue of estoppel was not brought forward at trial. The issue at trial was whether there had been an *oral* agreement to modify the loan.[2] The trial court found that the note, mortgage, and the prenegotiation letter all required any modification to be in writing signed by the parties. The trial court also found that there was no evidence of a written agreement to modify the mortgage that was accepted or agreed to by the bank. This plain language in the loan documents and the prenegotiation letter bound the parties. *Kelley v. Ferraro*, 188 Ohio App.3d 734, 2010-Ohio-2771, 936 N.E.2d 986, at ¶ 39 ("Ohio law is very clear that a contract that expressly provides that it may not be amended, modified, or waived except in writing executed by the parties is not subject to oral modification").

{¶ 27} Second, the Parks argue that the prenegotiation letter was a written modification of the loan that required the parties to negotiate. In essence, the Parks are asserting that the prenegotiation agreement itself granted a forbearance until the parties negotiated. The Parks cite a portion of the trial transcript in which Holland testified as follows:

Q. So your letter on November 21, 2008 to offer to negotiate, you had made your decision at least by December 17, three weeks later, not to negotiate?

A. Yes.

Q. When did you first make that decision?

A. Well, for two reasons that decision was made. One, we never received any of the documents that we had requested. We were growing extremely concerned because the very first conversation I had with Justin Mann when I was trying to ascertain what the problem was his initial response to me, which was different from the response to the master servicer, that there really wasn't any problems with the operational performance of his properties, that they

---

2. That issue was not raised in the pleadings, but the court heard evidence on the issue, since there was no objection by counsel for the bank.

owned various other properties that were in trouble, and that they were diverting the funds and using the funds from this subject property to meet obligations on other properties.

So between the initial conversation that I had with him, which was of grave concern to us, and not having received the documents that were requested in a prompt fashion, I would think if someone needed help they would send that documentation promptly.

{¶ 28} Even assuming that the letter agreement required the parties to negotiate, the agreement did not specify that Holland had to personally negotiate. There was evidence that negotiations took place. A May 21, 2009 e-mail quotes Holland as saying to Mann:

To set the record straight, we are proceeding with foreclosure. In the meantime a Receivership allows us to maintain the property, so that it does not further deteriorate, until foreclosure can be concluded. *If you have a new proposal or a request, we can surely consider it* but at this point you should be submitting any requests through your attorney to my attorney.

(Emphasis added.)

{¶ 29} Thus, as late as May 2009, the bank indicated a willingness to consider a new proposal to negotiate a modification.

{¶ 30} Also, in connection with its July 6, 2009 motion for leave to file its answer instanter, counsel for the Parks made the following representation: "Prior to the initiation of this action, the parties were engaged in negotiations to resolve their disputes and had made significant progress toward that end." Although the Parks may have been disappointed that the bank failed to consent to their requests, one cannot say that there were no negotiations.

{¶ 31} Finally, the bank was acting within its rights when it initiated foreclosure proceedings. The specific language of the loan documents and the prenegotiation letter indicate that the bank was entitled to immediately initiate foreclosure proceedings in the event of default. The letter agreement states: "Nothing contained herein shall limit [the lender] in initiating, continuing or otherwise proceeding to exercise any right or remedy available to [the lender] under the Loan Documents or otherwise, including but not limited to seeking appointment of a receiver or other equitable or injunctive relief as [the lender] may determine to be necessary or desirable."

{¶ 32} The bank's decision to pursue its contractual remedies cannot be considered to be an act of bad faith. " 'Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of "good faith." ' " *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 443, 662 N.E.2d 1074,

quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting* (C.A.7, 1990), 908 F.2d 1351, 1357.

{¶ 33} The first assignment of error is overruled.

{¶ 34} In the second assignment of error, the Parks argue that it was error for the trial court to rely upon the admission of default and other terms in the prenegotiation letter. More specifically, the Parks condition this argument on this court finding the letter agreement unenforceable, presumably for the bank's alleged lack of good faith.

{¶ 35} Even without the admission of default made in the letter agreement, there was evidence that the Parks were in default. The loan documents stated that missed payments were an act of default, and it is undisputed that the Parks failed to make their October and November 2008 payments. Even without the letter agreement, the loan documents set forth the remedies that the bank was entitled to pursue, and did pursue. It was not error for the trial court to consider the Parks' admissions in the prenegotiation agreement, but even if the evidence were excluded, the remaining evidence supports the trial court's findings. The second assignment of error is overruled.

{¶ 36} In the third assignment of error, the Parks contend that the bank failed to prove that it was the proper party to bring an action against them. The Parks argue that the LB–UBS Commercial Mortgage Trust 2006–C7 holds the note and is entitled to enforce its provisions. The Parks contend that without the trust document naming the bank as the trustee being admitted into evidence, the bank has not established its right to initiate foreclosure proceedings.

[4, 5] {¶ 37} This argument is not well taken. In foreclosure actions, the real party in interest is the current holder of the note and mortgage. *Wells Fargo Bank, N.A. v. Sessley,* 188 Ohio App.3d 213, 2010-Ohio-2902, 935 N.E.2d 70, ¶ 11; *Everhome Mtge. Co. v. Rowland,* 10th Dist. No. 07AP–615, 2008-Ohio-1282, 2008 WL 747698, ¶ 12. At trial, the bank produced the original note, the original allonge, a certified copy of the recorded mortgage, and a certified copy of the assignment of mortgage. The third assignment of error is overruled.

{¶ 38} Based on the foregoing, the bank's motion to dismiss is denied, the Parks' three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Motion to dismiss denied;
judgment affirmed.

KLATT and SADLER, JJ., concur.