[Cite as *Gen. Elec. Capital Corp. v. Tartan Fields Golf Club, Ltd.*, 2013-Ohio-4875.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION | : | JUDGES: |
| | : | |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13 CAE 04 0035 |
| | : | |
| TARTAN FIELDS GOLF CLUB, LTD., ET AL. | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County Court of Common Pleas, Case No. 09 CVE 05 0709

JUDGMENT:                                    AFFIRMED

DATE OF JUDGMENT ENTRY:      October 30, 2013

APPEARANCES:

For Plaintiff-Appellee:

KENNETH C. JOHNSON
JUSTIN W. RISTAU
100 S. Third St.
Columbus, OH 43215

TIMOTHY J. PATENODE
JENNIFER C. RYAN
525 West Monroe St.
Chicago, IL 60661

For Defendant-Appellant:

BRET A. ADAMS
5003 Horizons Dr., Suite 200
Columbus, OH 43220

*Delaney, J.*

{¶1} Defendant-Appellant Tartan Fields Golf Club, Ltd. appeals the March 6, 2013 judgment entry of the Delaware County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

{¶2} On May 23, 2007, Defendant-Appellant Tartan Fields Golf Club, Ltd. executed and delivered a Note to Plaintiff-Appellee General Electric Capital Corporation ("GECC") in the amount of $13,300,000. Under the terms of the Note, Tartan Fields agreed to pay GECC in the manner and times provided in a related Loan Agreement signed by the parties on May 23, 2007. As security for the payment of all indebtedness due under the loan documents, Tartan Fields executed and delivered to GECC an Open-End Mortgage, Security Agreement and Fixture Filing on May 23, 2007.

{¶3} In early 2009, Tartan Fields sought to renegotiate the Loan Agreement and a related loan for another golf course business. GECC agreed to engage in renegotiations regarding the Loan Agreement, but only upon terms and conditions set forth in a letter dated April 30, 2009. Tartan Fields signed the letter on May 5, 2009. The parties refer to the letter as the "Pre-Negotiation Agreement." Relevant to this appeal, the terms of the Pre-Negotiation Agreement were as follows:

> Borrower [Tartan Fields] has requested Lender [GECC] engage in certain
> discussions and negotiations concerning the Loan. Lender has agreed to
> do so, but only upon the terms and conditions set forth in this letter (this
> "Agreement"). When signed by each of us, this Agreement constitutes a
> binding agreement between Borrower, Joinder Party and Lender with
> respect to the subject matter hereof. * * * The primary purpose of this

Agreement is to preserve all parties' rights, claims and defenses during such negotiations and discussions so that no party waives or relinquishes any rights or incurs any obligations unless and until further written agreement as described in Section 2 hereof is executed and delivered by all parties.

1. Negotiations.  No party will have any obligation to modify or amend the Loan or any of the Loan Documents in connection with such negotiations or otherwise; provided, however, Borrower and Joinder Party each acknowledges and understands that modifications to the Loan Agreement or the other Loan Documents may be requested or required by Lender in connection with the negotiations.  Any party may terminate the negotiations at any time in its sole discretion, upon three (3) business days' prior written notice to the other party, without liability of any kind. Unless a written agreement described in Section 2 hereof is executed and delivered by all parties, no party will have any obligation or liability by virtue of the commencement or termination of negotiations concerning the Loan.  In no event will any party be deemed to have waived any right, incurred any liability or assumed any obligation by negotiating or by the passage of time associated therewith unless and until a written agreement to such effect as described in Section 2 hereof is executed and delivered by all parties.

* * *

2. <u>Only Written Agreements and Amendments</u>.  The parties agree that no party will be bound by any agreement on any issue until reduced to writing and executed by, and delivered to, all parties (such a written agreement hereinafter referred to as a "Modification Agreement").  Each party acknowledges and agrees that the execution of this Agreement by the parties shall not constitute an agreement, consent, waiver, release, or modification, oral, express, implied or otherwise, of the Loans, Borrower's obligations under the Loan Documents, or the Loan Documents, which can only be effected by execution of a Modification Agreement.

3. <u>Loan Documents Still in Force</u>.  Borrower acknowledges and agrees that no agreement has been reached as to the renewal, extension or modification of any of the Loan Documents.  Notwithstanding any other provisions to this Agreement or any claims of the parties to the contrary, the Loan Documents and the respective rights and obligations of the parties thereto are in full force and effect, and will remain in full force and effect unless and until a Modification Agreement, which, by its terms, amends or modifies any part of the Loan Documents, is executed and delivered by the parties.

4. <u>No Waivers</u>.  No negotiations or other action, including, without limitation, acceptance by Lender of any payment due Lender under the Loan, undertaken pursuant to this Agreement will constitute a waiver of, or be deemed to prejudice any party's rights under the Loan Documents, including, without limitation, any rights or remedies conferred on Lender by

any Event of Default or the occurrence of any event that, without the giving of notice or passage of time or both, would constitute an Event of Default under any of the Loan Documents, except to the extent specifically stated in a Modification Agreement. Notwithstanding anything to the contrary contained in this Agreement and subject to any applicable notice, grace or cure periods, Lender reserves the right to exercise any right or remedy available to Lender pursuant to the Loan Documents or by applicable law or in equity during the pendency of the negotiations, including, but not limited to, the right to deliver notice to Borrower or pursue any remedy regarding an Event of Default, and nothing herein will operate to restrict, inhibit, or prohibit Lender from exercising any such right or remedy.

* * *

12. <u>No Special Duty</u>. Borrower acknowledges, for and on behalf of each Borrower Party, that Lender has no fiduciary, confidential or special relationship with Borrower or Borrower Party and no such relationship is created by the execution of this Agreement or the participation by Lender in the negotiations contemplated by this Agreement.

17. <u>Miscellaneous</u>. This Agreement constitutes our entire agreement concerning the subject matter hereof and all prior or contemporaneous understanding, oral representations or agreements had among the parties with respect to the subject matter hereof are merged in, and are contained in, this Agreement. The parties expressly state that they did not rely on

any representation, oral or written, not contained in this Agreement in reaching their respective decisions to enter into this Agreement. This Agreement will inure to the benefit of, and be binding upon, the parties hereto and their respective heirs, successors and assigns, and will be governed by, and interpreted in accordance with Ohio law.  * * *

{¶4} The referred to loan documents required Tartan Fields to make a loan payment on May 1, 2009. Tartan Fields did not make the payment on May 1, 2009. Under Section 10.1 of the Loan Agreement, the failure to pay a regularly scheduled installment of principal, interest or other amount due under the loan documents within five days after the date when due, or the borrower's failure to pay the loan at the maturity date, constituted an "Event of Default." In the Event of Default, the unpaid loan principal balance became immediately due and payable.

{¶5} On May 13, 2009, GECC sent Tartan Fields a letter notifying Tartan Fields the unpaid principal balance of the loan was immediately due and payable, including the unpaid interest.

{¶6} GECC filed a complaint in foreclosure on May 29, 2009. Tartan Fields filed an answer and counterclaim, asserting ten affirmative defenses and counterclaiming GECC breached the Pre-Negotiation Agreement, breached the duty of good faith and fair dealing, and fraudulent failure to disclose material information.

{¶7} On January 7, 2013, GECC filed a motion for summary judgment on all its claims and Tartan Fields's counterclaims. Tartan Fields responded. The trial court granted the motion for summary judgment on March 6, 2013. The issue remaining was the amount due on the Note. The parties negotiated an Entry regarding the amount due

on the Note.  On April 3, 2013, the trial court granted foreclosure and set the balance owed to GECC at $17,907,924.32 and ordered the property to be sold.

{¶8}   It is from these judgments Tartan Fields now appeals.

## ASSIGNMENTS OF ERROR

{¶9}   Tartan Fields raises three Assignments of Error:

{¶10} "I. THE TRIAL COURT IMPROPERLY AWARDED SUMMARY JUDGMENT BECAUSE TRIABLE ISSUES OF FACT EXISTED REGARDING WHETHER THE PRE-NEGOTIATION AGREEMENT WAS A CONTRACT BETWEEN GECC AND TARTAN.

{¶11} "II. THE TRIAL COURT ERRED IN FINDING NO FIDUCIARY DUTY EXISTED BETWEEN GECC AND TARTAN AND THAT GECC BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING.

{¶12} "III. THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT BECAUSE TRIABLE ISSUES OF FACT EXISTED REGARDING GECC'S ALLEGED FRAUD IN ISSUING THE PRE-NEGOTIATION AGREEMENT."

## ANALYSIS

### *Standard of Review*

{¶13} The trial court granted summary judgment in favor of GECC on March 6, 2013.  The three Assignments of Errors raised by Tartan Fields arise from this judgment.  We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits,

transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶14} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.  *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996).  The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists.  *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶15} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed.  *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

*I.*

{¶16} Tartan Fields argues in its first Assignment of Error the trial court erred when it determined the Pre-Negotiation Agreement was not a contract and found that GECC did not breach the Pre-Negotiation Agreement by filing a complaint in foreclosure. The basis of Tartan Fields's argument is that the Pre-Negotiation Agreement states the parties cannot terminate the negotiations without three days business days' prior written notice. Tartan Fields contends that when GECC filed the complaint in foreclosure, the filing was an impermissible termination of the loan modification negotiations between GECC and Tartan Fields. We disagree.

{¶17} In its March 6, 2013 judgment entry, the trial court held:

This Court has a legal duty to construe and enforce unambiguous documents. In this case, nothing in the Pre-Negotiation Agreement consents to the Borrower's failure to make or to delay scheduled payments during the negotiations or at any other time. Indeed, the Pre-Negotiation Agreement expressly and unequivocally denies that it modifies any obligation in the Loan Agreement or any other loan document.

The parol evidence rule bars the Borrower's reliance on any communications during or in anticipation of negotiations, where the Loan Agreement and the Pre-Negotiation Agreement both state that they are the entire agreement and that they can be modified only by a writing signed by both parties.

{¶18} A review of the record shows that GECC has never disputed the Pre-Negotiation Agreement was a binding contract between the parties. The trial court interpreted the Pre-Negotiation Agreement as a contract. The dispute in this case is over the terms of the Pre-Negotiation Agreement.

{¶19} When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. *Westfield Ins. Group v. Affinia Dev., L.L.C.,* 2012–Ohio–5348, 982 N.E.2d 132, ¶ 21 (5th Dist.). We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Sunoco, Inc. (R & M) v. Toledo Edison, Co.,* 129 Ohio St.3d 397, 2011–Ohio–2720, 953 N.E.2d 285, ¶ 37 citing *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003–Ohio–5849, 797 N.E.2d 1256, ¶ 11.

{¶20} Under the unambiguous terms of the Pre-Negotiation Agreement, the Agreement did not require GECC to formally terminate negotiations before enforcing the terms of the Loan Agreement. Sections 1 and 3 of the Pre-Negotiation Agreement unambiguously state GECC did not waive any rights under the loan documents and the terms of the Loan Agreement remained in full force and effect during the negotiations. Under the terms of the Loan Agreement, the failure to pay the monthly payment within

five days of the due date constitutes an Event of Default.   Section 4 of the Pre-Negotiation Agreement states:

> No negotiations or other action, including, without limitation, acceptance by Lender of any payment due Lender under the Loan, undertaken pursuant to this Agreement will constitute a waiver of, or be deemed to prejudice any party's rights under the Loan Documents, including, without limitation, any rights or remedies conferred on Lender by any Event of Default or the occurrence of any event that, without the giving of notice or passage of time or both, would constitute an Event of Default under any of the Loan Documents, except to the extent specifically stated in a Modification Agreement.   Notwithstanding anything to the contrary contained in this Agreement and subject to any applicable notice, grace or cure periods, Lender reserves the right to exercise any right or remedy available to Lender pursuant to the Loan Documents or by applicable law or in equity during the pendency of the negotiations, including, but not limited to, the right to deliver notice to Borrower or pursue any remedy regarding an Event of Default, and nothing herein will operate to restrict, inhibit, or prohibit Lender from exercising any such right or remedy.

{¶21} The plain language of the Pre-Negotiation Agreement states the terms of the Loan Agreement remained in full force and effect during the negotiation process. There is no dispute of fact that Tartan Fields did not make a monthly payment required under the terms of the Loan Agreement.   The unambiguous language of the Pre-Negotiation Agreement stated GECC could enforce its rights under the terms of the

Loan Agreement during the negotiations. A formal termination of the negotiations was not required to enforce the terms of the Loan Agreement. Reasonable minds can only conclude the enforcement of the terms of the Loan Agreement was not a breach of the Pre-Negotiation Agreement.

{¶22} Tartan Fields's first Assignment of Error is overruled.

*II., III.*

{¶23} We consider the second and third Assignments of Error of Tartan Fields together because they require similar analysis. Tartan Fields argues in its second Assignment of Error the trial court erred when it found there was no fiduciary relationship between the parties and GECC did not breach the covenant of good faith and fair dealing. In its third Assignment of Error, Tartan Fields argues GECC engaged in fraudulent misrepresentation during the negotiation process. Tartan Fields contends there was a genuine issue of material fact whether GECC truly intended to renegotiate the terms of the original Loan Agreement when it entered into the Pre-Negotiation Agreement.

{¶24} Count Three of Tartan Fields's complaint is fraudulent concealment. It stated that when GECC agreed to modification of the Loan Agreement, it did not intend to present the loan modification for approval to its loan committee. In order to demonstrate fraud, Tartan Fields must show (a) a representation, or where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it was true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the

representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Strategy Group for Media, Inc. v. Lowden*, 5th Dist. Delaware No. 12 CAE 03 0016, 2013-Ohio-1330, ¶ 26 citing *Developers Diversified Realty v. Coventry Real Estate Fund II, LLC*, 8th Dist. Cuyahoga No. 97231, 2012–Ohio–1056, ¶ 20.

{¶25} This Court has held that fraud is committed by a failure to disclose only when the person is under a duty to disclose, and the duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or another similar relation of trust and confidence between them. *Strategy Group for Media, Inc.* at ¶ 28 citing *Advanced Production Center, Inc. v. EMCO Maier Corp.*, 5th Dist. Delaware No. 2003CAE03020, 2003–Ohio–6206, ¶ 14 citing *Fed. Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 383–384, 738 N.E.2d 842 (10th Dist.2000). A "fiduciary relationship" is a relationship in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust. *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 442, 662 N.E.2d 1074 (1996). In business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated, and therefore, generally neither party has a duty to disclose material information to the other. *Advanced Production Center, Inc., supra*, citing *Blon v. Bank One*, 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (1988).

{¶26} Generally, the relationship between a creditor and debtor is not a fiduciary one, but is governed by freedom of contract. *Kohl v. Natl. City Bank*, 5th Dist. Tuscarawas No. 05AP05033, 2006-Ohio-2031, ¶ 23 citing *Stone v. Davis*, 66 Ohio

St.2d 74, 78, 419 N.E.2d 1094 (1981).  In this case, the Pre-Negotiation Agreement addresses the relationship of the parties.  Section 12 of the Pre-Negotiation Agreement states:

> Borrower acknowledges, for and on behalf of each Borrower Party, that Lender has no fiduciary, confidential or special relationship with Borrower or Borrower Party and no such relationship is created by the execution of this Agreement or the participation by Lender in the negotiations contemplated by this Agreement.

There is no genuine issue of material fact that no fiduciary relationship or relationship of special confidence exists between the parties in this case, either by contract or by law.

{¶27} Tartan Fields's next argument is GECC breached the covenant for good faith and fair dealing when it initiated foreclosure proceedings during the negotiation process.  This Court has held that the enforcement of the terms of a mortgage, even during the pendency of negotiations, is not an act of bad faith.  In *CitiMortgage Inc. v. Parrish*, 5th Dist. Delaware No. 12 CAE 02 0011, 2012-Ohio-3778, we held:

> In this case, the loan modification discussions, which were never accepted by Appellants, did not bar the bank from seeking foreclosure. The Ohio Supreme Court said in one foreclosure case that "[the lender]'s decision to enforce the written agreements cannot be considered an act of bad faith." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 662 N.E.2d 1074, 1996–Ohio–194.  The Court then quoted the Seventh Circuit Court of Appeals: " 'firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their

trading partners, without being mulcted for lack of "good faith." ' " *Id.*, *quoting Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990). "Indeed," said the Court, "[the lender] had every right to seek judgment on the various obligations owed to it by [the borrower] and to foreclose on its security." *Id.*

In a recent Tenth District foreclosure case, *U.S. Bank Natl. Assn. v. Mobile Assoc. Natl. Network Sys., Inc.*, 195 Ohio App.3d 699, 961 N.E.2d 715, 2011–Ohio–5284, before the bank filed a foreclosure action, it and the borrowers had agreed in a letter to negotiate about the borrowers' obligations. The borrowers asserted that the letter agreement was a binding contract that modified the loan to require the parties to negotiate. They contended that the bank failed to negotiate, breaching the modified loan. Until the bank negotiated, argued the borrowers, it should be estopped from foreclosing. The Tenth District rejected this argument for several reasons. Pertinent among them, the court said that the bank had the right to initiate foreclosure proceedings. The court found that a provision in the loan documents provided that "the bank was entitled to immediately initiate foreclosure proceedings in the event of default." *U.S. Bank* at ¶ 1. "The bank's decision to pursue its contractual remedies," said the court, "cannot be considered to be an act of bad faith." *Id.*, citing *Ed Schory* at 443, 662 N.E.2d 1074.

Also, in a Fifth District foreclosure case, *Key Bank Natl. Assoc. v. Bolin*, 5th Dist. Stark No.2010 CA 00285, 2011–Ohio–4532, the trial court

granted summary judgment for the lender on its foreclosure complaint. The borrower argued that the trial court erred and abused its discretion by doing so because the lender acted in bad faith and misrepresented to the borrower that she could participate in a loan modification program. This Court rejected this argument, finding no provision in the mortgage document "prevent[ed] the lender from insisting on the strict performance of the mortgage obligations." *Key Bank* at ¶ 37.

*Id.* at ¶ 26-28.

{¶28} As we held above, the plain language of the Pre-Negotiation Agreement states the terms of the Loan Agreement remained in full force and effect during the negotiation process. There is no dispute of fact that Tartan Fields did not make a monthly payment required under the terms of the Loan Agreement. The unambiguous language of the Pre-Negotiation Agreement stated GECC could enforce its rights under the terms of the Loan Agreement during the negotiations. There is no genuine issue of material fact the enforcement of the terms of the Loan Agreement was not a breach of the Pre-Negotiation Agreement.

{¶29} The second and third Assignments of Error of Tartan Fields are overruled.

**CONCLUSION**

{¶30} The first, second, and third Assignments of Error of Defendant-Appellee Tartan Fields Golf Club, Ltd. are overruled.

{¶31} The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Farmer, J., concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER