[Cite as *SST Bearing Corp. v. Twin City Fan Cos., Ltd.*, 2012-Ohio-2490.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SST BEARING CORPORATION, | : | APPEAL NO. C-110611 |
| | | TRIAL NO. A-0906751 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| TWIN CITY FAN COMPANIES, LTD., | : | |
| | | |
| Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part and Vacated in Part

Date of Judgment Entry on Appeal:  June 8, 2012

*Dinsmore & Shohl, LLP, Deborah R. Lydon* and *Robert M. Zimmerman,* for Plaintiff-Appellee,

*Lindquist & Vennum, PLLP, Jonathan M. Bye* and *Kirstin D. Kanski,* and *Taft, Stettinius, & Hollister, LLP,* and *Ryan C. Edwards,* for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**SYLVIA S. HENDON, Judge.**

{¶1}    This is a contract case.  In this action, we must determine what terms had become part of the contract executed between defendant-appellant Twin City Fan Companies ("Twin City") and plaintiff-appellee SST Bearing Corporation ("SST"), whether the terms of that contract had been breached, and whether the trial court properly awarded attorney fees and late fees to SST based upon its determination that Twin City had breached the parties' contract.

{¶2}    For the reasons that follow, we affirm the trial court's judgment finding that Twin City had breached the parties' contract, and we affirm the court's award of attorney fees to SST based on the court's finding that Twin City had acted in bad faith.  But we reverse that portion of the trial court's entry awarding late fees because we hold that the provision allowing SST to recover late fees had not become part of the parties' contract.

### Factual Background

{¶3}    Twin City manufactures and sells both industrial and commercial fans.  SST manufactures industrial components, such as bearings, that are used in various industrial products.  Twin City and SST entered into a contract for SST's production of six different sizes of pillow block bearings to be used in Twin City's fans.  The exact terms of this contract are at issue on appeal, and will be discussed below.  This description of the pertinent facts explains the interactions between and documents exchanged by the parties, and it is not a determination of the definite contractual terms.

{¶4} In late February of 2008, Twin City sent SST a proposed contract outlining the parties' agreement. The contract specified the quantity of each sized bearing to be ordered, as well as the price per unit for each size of bearing. The prices set forth in the contract were not the initial prices that had been quoted by SST. After receiving SST's initial price per unit based on Twin City's provided estimated annual usage per part, Twin City then increased its estimated annual usage of particular bearings. Based on the increased quantity, SST lowered its price per unit.

{¶5} The contract further specified that all bearings would be produced with a particular swivel torque range, which was to be determined at a later date. Swivel torque is the amount of force necessary to swivel or rotate a bearing within its housing. The contract was deemed a blanket purchase order against which shipments were not to be made. Rather, the parts would be shipped in installments at a later date following separate purchase orders.

{¶6} The contract sent to SST contained the following language "Please formally accept this order subject to Twin City Fan's terms and conditions per Form No. 1-1113 Rev 6-2007." But the parties dispute whether this form containing Twin City's terms and conditions had actually been sent along with the proposed contract. The form is not contained in the document which both parties agree is an embodiment of their final contract. An appendix was sent along with the contract, and this appendix contained similar language stating that all sales by SST were subject to Twin City's terms and conditions contained on order form 1-1113. SST salesman David Lindberg signed the contract on March 20, 2008. When Lindberg sent the signed contract to Twin City, he included a form containing SST's terms and

conditions. This form stated "seller hereby accepts, with thanks, your offer to purchase the goods described on the reverse side hereof on the terms and conditions specified thereon, and on the additional terms and conditions specified below." SST's terms and conditions specified that any other terms and conditions would have no force or effect.

{¶7} After receiving the signed contract Twin City did not object to SST's inclusion of its own terms and conditions, and the parties began performance under the contract. In July of 2008, the parties' determined the applicable swivel torque ranges, and in the fall of 2008 Twin City approved samples of each sized bearing that had been manufactured and shipped by SST. On November 14, 2008, Twin City issued its first installment purchase order for approximately 1,800 bearings sized ¾ inch. This first production run of bearings was received by Twin City in March of 2009. In May of 2009, Twin City informed SST that it had concerns about the bearings' looseness and that the swivel torque ranges of the bearings were not in compliance. Twin City then canceled the entire purchase order for all sized bearings without providing SST an opportunity to examine, cure, or replace the allegedly defective bearings.

{¶8} Upon Twin City's cancellation of the contract, SST commenced this action. In a trial to the bench, both SST and Twin City argued that its own respective terms and conditions governed the parties' dispute. Under Twin City's terms and conditions, it had a right to cancel the contract at any time and SST's recovery was limited to actual costs incurred at the time of termination. Under SST's terms and conditions, it had the right to repair or replace any defective goods, and it was also entitled to receive late payment charges and attorney fees.

{¶9} The trial court found that Twin City had not canceled the contract for good cause and that its objections to the bearings produced by SST were without merit. The court held that Twin City was liable for the full contract price for all sized bearings, including late fees. The court further held that Twin City must pay all attorney fees and costs incurred by SST because such fees were provided for in SST's terms and conditions and because Twin City had acted in bad faith. The trial court awarded SST a total judgment of $506,336.65. This amount included $133,314.35 for the invoice amount of the contract following SST's mitigation efforts, $69,323.46 in monthly late fee payments, and $303,698.83 for SST's legal costs and fees.

{¶10} Twin City now appeals. In two assignments of error it argues that the trial court erred in entering judgment in favor of SST and in awarding SST late fees and attorney fees. Before considering these assignments of error, we must first determine what terms were included in the parties' contract.

### *Contractual Terms*

{¶11} Neither Twin City nor SST dispute the contract terms contained on their blanket purchase order concerning quantity and price of the bearings. But each party argues that its own respective terms and conditions had become part of the contract and that the other parties' terms and conditions had no effect. Twin City asserts that the contract's statement "Please formally accept this order subject to Twin City's terms and conditions per Form No. 1-1113 Rev 6-2007" incorporated its terms and conditions by reference and made the document a part of the contract. But SST argues that its attachment of its own terms and conditions to the signed contract, in the absence of an objection or response from Twin City, made those the governing terms and conditions of the contract.

{¶12} R.C. 1302.10, Ohio's version of UCC 2-207, governs resolution of the parties' dispute. R.C. 1302.10 addresses situations in which additional terms are contained in an acceptance. It provides that "[a] definite and seasonable expression of acceptance or a written confirmation that is sent within a reasonable time operates as an acceptance even though it states terms additional or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." R.C. 1302.10(A).

{¶13} In this case, SST's purported acceptance of Twin City's contractual offer included additional terms, namely its own terms and conditions. So we must determine whether SST's acceptance was expressly made conditional upon Twin City's assent to its additional terms. SST's terms and conditions stated

> Seller hereby accepts, with thanks, your offer to purchase the goods described on the reverse side hereof on the terms and conditions specified thereon, and on the additional terms and conditions specified below. This acceptance is conditioned expressly on buyer's assent that any other terms and conditions shall have no force or effect and shall not constitute any part of the agreement between seller and buyer.

Clearly, SST's acceptance was expressly conditioned on Twin City's assent to SST's terms and conditions. As such, under R.C. 1302.10(A), SST's response did not, standing alone, operate as an expression of acceptance. But R.C. 1302.10(C) provides that "[c]onduct by both parties that recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish such a contract. In such case, the terms of the particular contract consist of those terms on which the writings of the parties agree."

{¶14} In this case, the parties' conduct undoubtedly recognized the existence of a contract. Twin City approved sample bearings sent by SST and placed an installment purchase order. SST shipped the bearings specified in that purchase order. Because the parties' conduct created a contract, the terms of that contract include only the terms upon which the parties agree. We hold that a contract was formed between Twin City and SST based on the terms of the blanket purchase order, and that neither parties' terms and conditions had become part of the contract.

### The Contract is Breached

{¶15} In its first assignment of error, Twin City argues that the trial court erred in entering judgment in favor of SST. Twin City specifically asserts that the trial court's finding that SST had performed its contractual obligations was in error. Twin City is essentially attacking the weight of the evidence supporting the trial court's decision.

{¶16} The Ohio Supreme Court has recently clarified and explained the standard of review to be applied when assessing the manifest weight of the evidence in a civil case. *Eastley v. Vollman*, _ Ohio St.3d _, 2012-Ohio-2179, _ N.E.2d _. In *Eastley*, the court held that the standard of review for the manifest weight of the evidence established in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), is also applicable in civil cases. *Id.* at ¶ 17-19. Consequently, when reviewing the weight of the evidence, our analysis must determine whether the trial court's judgment was supported by the greater amount of credible evidence, and whether the plaintiff met its burden of persuasion, which is by a preponderance of the evidence. *Id.* at ¶ 19. We are mindful that, in a bench trial, "the trial judge is best

7

able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). It follows that, "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

{¶17} To succeed on a claim for breach of contract, a plaintiff must establish the existence of a contract, performance by the plaintiff, breach by the defendant, and resulting damages incurred by the plaintiff. *Brunsman v. W. Hills Country Club*, 151 Ohio App.3d 718, 2003-Ohio-891, 785 N.E.2d 794, ¶ 11 (1st Dist.). Twin City contends that SST failed to establish that it performed its contractual obligations because it proffered no evidence to demonstrate that the bearings it produced complied with the required swivel torque ranges. Twin City's assertion is incorrect.

{¶18} First, Twin City approved the sample bearings sent by SST, indicating that those bearings fell within the required swivel torque ranges. Further, various SST witnesses testified concerning the procedure used by SST to test the swivel torque ranges of its bearings. Doug Homan, general manager of SST, testified that its product assemblers tested the swivel torque of the 1800 bearings shipped to Twin City. Homan explained that SST's assemblers tested the bearings by hand to determine if they fell within the applicable swivel torque range, and he described the process used to do so. David Lindberg, the SST salesman involved in negotiating the contract with Twin City, corroborated Homan's testimony. And SST president and

owner Winfield Scott further explained the process used to test the swivel torque range of a bearing by hand. Scott testified that SST had certified the swivel torque ranges of the sample bearings sent to Twin City by testing them with a swivel torque wrench, and that it had checked by hand the swivel torque range of the first shipment of bearings sent to Twin City.

{¶19} In addition to testimony from its own witnesses, SST produced at trial an internal email exchanged between two Twin City employees that indicated that SST's bearings had not been defective. Doug Homan identified an email sent from a Twin City plant manager to Twin City employee Tony Mohr, a purchasing manager that had been Twin City's main contact with SST. This email stated "FYI we have not had any failures on the sst's we are rejecting them."

{¶20} To support the argument that SST failed to establish its own performance, Twin City refers us to the testimony of its witnesses William Detweiler and Joshua Schwantes. Detweiler had testified as an expert witness for Twin City and had tested the swivel torque ranges of the bearings, although he did so after Twin City had rejected the bearings and canceled its contract with SST. Detweiler testified that a large majority of the bearings he tested had not fallen within the applicable swivel torque ranges and were not suitable for use in Twin City's fans. But the trial court found the testimony of Detweiler to lack all credibility. The court found that Detweiler had committed his opinions to Twin City prior to conducting any actual testing of the bearings. It further found that Detweiler had a personal interest in displacing SST, and it cited Detweiler's testimony that he had told "a little white lie" while working as an expert for Twin City. The trial court made a similar finding with respect to the credibility of witness Joshua Schwantes, who had also

testified that the bearings did not possess the required swivel torque. The court found that Schwantes was not an expert, and noted that Schwantes' testing had been supervised by Detweiler.

{¶21} The trial court's findings that SST had performed under the contract and that Twin City had breached the contract by rejecting a product with no defects was supported by the greater amount of credible evidence and was not against the manifest weight of the evidence. We give great deference to the court's judgment on matters of credibility, and it clearly found Twin City's witnesses to be incredible.

{¶22} Twin City next argues that the trial court erred in determining that it had to pay for all bearings other than the ¾ inch bearings that it had rejected. In support, Twin City cites its terms and conditions, which provided that it could terminate the contract at any time and that the seller's remedy was limited to actual costs incurred at the point of termination. But Twin City's terms and conditions had not become part of the contract executed between the parties. Consequently, Twin City cannot rely on its terms and conditions to justify its breach or limit its damages owed to SST.

{¶23} Twin City additionally relies on R.C. 1302.70 to support its rejection of the whole contract. R.C. 1302.70 concerns the breach of an installment contract, and it provides in relevant part that "[w]henever non-conformity or default with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole." R.C. 1302.70(C). Twin City's argument is misplaced. This court has already upheld the trial court's finding that there had been no non-conformity or defect with respect to the ¾ inch bearings sent to Twin City. It necessarily follows that, in the absence of impairment with the first installment, the

value of whole contract had not been impaired. Twin City rejected the entire contract after receiving shipment of only one sized bearing that was not actually defective. Further, Twin City did not provide SST an opportunity to examine, cure, or replace the goods that were allegedly impaired. The trial court correctly determined that Twin City was liable for the entire contract and not just the portion of the bearings that it had received and improperly rejected.

{¶24} In summary, the trial court's determination that Twin City had breached the contract with SST was not against the manifest weight of the evidence. The court did not err in entering judgment in favor of SST, and the first assignment of error is overruled.

### *Attorney Fees and Late Fees*

{¶25} In its second assignment of error, Twin City argues that the trial court erred in awarding SST attorney fees and late fees.

{¶26} The trial court found that Twin City was liable for attorney fees and late fees pursuant to SST's terms and conditions. But SST's terms and conditions had not become part of the parties' contract and had no legal force or effect. Consequently, the terms and conditions cannot be used to support an award of late fees or attorney fees. However, a further analysis of the court's award of attorney fees is necessary.

{¶27} The trial court additionally awarded SST attorney fees because it found that Twin City had acted in bad faith. The court specifically stated that "[t]he breach by [Twin City] was in bad faith. [Twin City] did not proceed in good faith when rejecting product it had not tested, and as such it is liable for attorney fees." Twin

City argues that the trial court erred in awarding attorney fees on these grounds. It contends that each party must pay its own fees in a breach-of-contract action.

{¶28} With respect to attorney fees, Ohio has adopted the "American Rule," which provides that each party to an action must pay his or her own attorney fees. *Keal v. Day*, 164 Ohio App.3d 21, 2005-Ohio-5551, 840 N.E.2d 1139 ¶ 5 (1st Dist.), citing *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.*, 46 Ohio St.2d 177, 179, 347 N.E.2d 527 (1976). But there are several exceptions to this general rule that allow for fee-shifting and taxing attorney fees as costs, specifically "(1) if there has been a finding of bad faith; (2) if a statute expressly provides that the prevailing party may recover attorney fees; and (3) if the parties' contract provides for fee-shifting." *Id. See also Wright v. Fleming*, 1st Dist. No. C-070121, 2008-Ohio-1435, ¶ 5 (recognizing that an award of attorney fees may be granted in a contract action upon a finding by the trial court of bad-faith conduct, but reversing the award of attorney fees because the trial court had not made such a finding).

{¶29} Here, because SST's terms and conditions were not a part of the parties' contract, the contract did not provide for fee-shifting. Nor is there an applicable statute that authorizes an award of attorney fees in this case. But the trial court made a finding that Twin City had acted in bad faith. "When an award of attorney fees is not authorized by statute or contract, the award is a matter of the trial court's sound discretion." *Id.* at ¶ 7. The trial court was well within its discretion to award attorney fees on bad faith grounds. With respect to bad faith, the following findings by the trial court are relevant: that Twin City had used SST's price to obtain leverage with other competitors; that Twin City had attempted to obtain trade-secret information from SST; that Twin City had canceled the entire contract

12

with SST prior to testing any of the bearings and had canceled orders for products for which they could find no fault; and that Twin City had refused to give SST an opportunity to cure any potential defects. The trial court's findings are accurate and are supported by the record.

{¶30} The trial court did not err in awarding SST attorney fees after finding that Twin City had acted in bad faith. But the court did err in awarding SST late fees, as the terms and conditions authorizing such an award were not a part of the parties' contract. The second assignment of error is sustained in part and overruled in part.

### *Conclusion*

{¶31} The trial court properly entered judgment in favor of SST on its claim for breach of contract. And the court did not abuse its discretion in granting SST an award of attorney fees based on its finding that Twin City had acted in bad faith. But the court erred in granting late fees to SST because such an award was not authorized by contract. Consequently, that portion of the trial court's entry awarding SST $69,323.46 in monthly late fees is vacated. The trial court's judgment is affirmed in all other respects.

Judgment accordingly.

SUNDERMANN, P.J., and DINKELACKER, J., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.