[Cite as *Bayer v. S. Pleasant Dev. Group, L.L.C.*, 2016-Ohio-1336.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| TERESA L. BAYER, ET AL. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellants | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 15-CA-16 |
| | : | |
| SOUTH PLEASANT DEVELOPMENT | : | |
| GROUP, LLC, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Fairfield County Court
of Common Pleas, Case No. 12-CV-672


JUDGMENT:      AFFIRMED


DATE OF JUDGMENT ENTRY:      March 24, 2016


APPEARANCES:

For Plaintiffs-Appellants:

RONALD B. NOGA
1010 Old Henderson Road, Suite 1
Columbus, OH 43220

For Defendants-Appellees:

JOHN M. SNIDER
CHARLES M. ELSEA
109 N. Broad St., Suite 200
P.O. Box 130
Lancaster, OH 43130-0130

MARY BARLEY-MCBRIDE
2109 Stella Court
Columbus, OH 43215

*Delaney, J.*

{¶1}   Plaintiff-Appellant Teresa L. Bayer, personally, and Teresa L. Bayer, as Trustee for the Teresa Bayer Family Trust, Dated March 30, 2009 appeals the February 19, 2015 judgment entry of the Fairfield County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   On January 18, 1972, Robert and June Whetstone granted Columbia Gas Transmission Corporation an oil and gas production and gas storage lease covering 49 acres of property located in Pleasant Township, Fairfield County, Ohio ("the Property"). On May 20, 1998, June Whetstone entered into a lease modification with Columbia Natural Resources, Inc., assignee of the original lease. The lease modification granted June Whetstone a royalty for a percentage of the gas produced and sold from a well on the Property. The lease modification also granted June Whetstone free gas up to a certain amount of cubic feet. A single gas well was drilled on the Property known as "Whetstone One." Whetstone One consistently produced oil and/or gas upon which June Whetstone received royalties.

{¶3}   On September 29, 1998, Geopetro LLC recorded a Declaration of Pooling and Unitization Agreement with the Fairfield County Recorder. Geopetro and Columbia Natural Resources pooled and consolidated the oil and gas leases from June Whetstone and surrounding property owners to form an oil and gas development unit called the "Whetstone et. al unit." The privilege of taking gas, free of cost, remained with June Whetstone.

{¶4}   On September 27, 2000, June Whetstone conveyed the Property to Donna L. Stevenson by general warranty deed. The general warranty deed contained the following term:

Reserving unto the Grantor [June Whetstone], any and all interest to the mineral rights of the above described property for the remainder of the Grantor's lifetime.

{¶5}   On March 1, 2002, Defendant/Third-Party Plaintiff/Appellee, South Pleasant Development Group, LLC ("SPD") made an offer to purchase the Property from Donna Stevenson. The offer included a statement that read, "Existing Oil & Gas Lease to Geo Petro. A life estate in the mineral interest was retained by June L. Whetstone for her life. All mineral rights including said Oil & Gas Lease, excepting said life estate, shall be assigned and transferred to Buyer." On April 19, 2002, Donna Stevenson conveyed the Property to SPD by general warranty deed. SPD took the Property subject to June Whetstone's life estate in the mineral rights as stated in the September 27, 2000 general warranty deed. SPD's interest in the Property was to subdivide the Property and sell it off into separate parcels. Don Hillyard, a principal of SPD, also intended that SPD retain the royalties for the oil and gas production after the termination of June Whetstone's life estate.

{¶6}   SPD hired Third-Party Defendant Anderson & Co. Realtors, LLC to sell the Property. SPD worked with real estate agent, Joni Baker. The MLS listing marketed the Property for sale for $120,000. The remarks in the MLS listing stated that there was an oil well but no mineral rights. On March 28, 2004, Baker amended the MLS remarks to

state, "seller to retain mineral royalties, buyer to be given rights and access to free gas per Geopetro regulations."

{¶7}   In 2005, a potential buyer was interested in purchasing two tracts of the Property from SPD. SPD drafted a proposed quit claim deed that would allow June Whetstone to retain her right to receive royalties for life, but would surrender the remainder of her mineral rights to SPD. The potential buyer backed out of the deal and the proposed quit claim deed was never signed by June Whetstone or SPD.

{¶8}   Plaintiff-Appellant Teresa L. Bayer is a licensed appraiser and realtor. In 2006, she became interested in purchasing the Property. Using Land Access, she researched the prior deeds and the oil and gas leases for the Property.

{¶9}   On April 26, 2006, Bayer drafted a purchase contract for the Property and faxed the purchase contract to Baker. Paragraph 13.1 stated the purchase contract constituted the entire agreement and there were no representations, oral or written, which had not been incorporated therein. Paragraph 13.3 stated all representations, covenants, and warranties of the parties contained in the purchase contract survived the closing. Bayer offered to purchase the Property for $90,000. Bayer drafted Addendum 1, as continuation of Paragraph 1.3 of the purchase contract regarding additional terms and conditions for the Property. Addendum 1 stated:

(1) Contract is contingent upon the following:

Approval of all government agencies to build residential home of buyers

choice.

Buyer is requesting all mineral rights and royalties in relation to the oil well

on premises.

Upon review and acceptance of current oil and gas leases.

Owner to provide copies of all easement rights of record to buyer.

Approval of all easement rights of record.

The purchase contract was signed by Bayer on April 26, 2006.

{¶10} On April 28, 2006, SPD submitted a counter offer. The April 28th counter offer agreed to and accepted all terms and conditions of the purchase contract or the most recent counter offer, both dated April 26, 2006. The April 28th counter offer made the following changes:

1. Purchase Price to be $107,000

2. Buyer to be granted all rights associated with oil and gas lease including free gas per Geopetro regulations.

3. Seller to retain all royalties associated with oil-gas lease with Geopetro.

SPD signed the April 28th counter offer that same day.

{¶11} On April 30, 2006, Bayer submitted a counter offer. She stated in her April 30th counter offer:

1. Purchase price to be $96,500

2. Buyer to be granted all rights associated with oil & gas lease including free gas per Geopetro regulations.

3. If the royalties are [quit] claimed from Mrs. Whetstone (current holder of royalties per agent) over to the development group (South Pleasant Development Group, LLC) upon the disolvement [sic] of the group all royalties to revert back to the buyer.

{¶12} On May 2, 2006, Bayer signed the April 28, 2006 counter offer drafted by SPD. The terms of the April 28th counter offer stated:

1. Purchase Price to be $107,000

2. Buyer to be granted all rights associated with oil and gas lease including free gas per Geopetro regulations.

3. Seller to retain all royalties associated with oil-gas lease with Geopetro.

Bayer signed her initials to the first provision that stated the purchase price was $107,000. Bayer did not initial or cross out the second and third provisions.

{¶13} On May 2, 2006, SPD signed the April 30, 2006 counter offer drafted by Bayer. The terms of the April 30th counter offer were:

1. Purchase price to be $96,500

2. Buyer to be granted all rights associated with oil & gas lease including free gas per Geopetro regulations.

3. If the royalties are [quit] claimed from Mrs. Whetstone (current holder of royalties per agent) over to the development group (South Pleasant Development Group, LLC) upon the disolvement [sic] of the group all royalties to revert back to the buyer.

SPD struck out the first provision stating the purchase price was $96,500. SPD and Bayer initialed the strike-through. SPD and Bayer did not initial or cross out the second and third provisions.

{¶14} The parties did not draft a final purchase contract reflecting the terms of the April 28, 2006 and April 30, 2006 counter offers.

{¶15} Prior to closing, Bayer spoke with Baker regarding a quit claim deed from June Whetstone. Baker faxed Bayer an unsigned copy of the quit claim deed SPD had drafted for the potential sale of the Property in 2005. Bayer testified that Baker told her she went to the nursing home where June Whetstone resided and obtained her signature on the quit claim deed. Baker denied making this statement to Bayer. There is no dispute that a quit claim deed from June Whetstone to SPD as to the mineral rights on the Property was ever signed. There is also no dispute that Bayer never saw or asked to see a signed copy of a quit claim deed between SPD and June Whetstone.

{¶16} The parties scheduled the closing on May 15, 2006. Bayer was provided the general warranty deed conveying the Property at the closing. Bayer read the first three paragraphs of the general warranty deed. The general warranty deed reads in pertinent part:

Reserving unto Grantor the right to receive the royalty payments under the oil and gas lease from Robert E. Whetstone and June L. Whetstone to Columbia Gas Transmission Corporation dated January 18, 1972 and filed for record on March 3, 1972 at 11:19 a.m. in Lease Volume 63, Page 200, after the death of June L. Whetstone who retained a life estate in said royalties. Upon the filing of a Certificate of Dissolution for South Pleasant Development Group, LLC, with the Secretary of State of Ohio, all royalties revert back to the Grantee, its successor or assigns.

Upon the death of June L. Whetstone, Grantor further grants to Grantee all right, title and interest in all minerals and mineral rights (excluding the above-mentioned royalty payments) in the above described real property

but including the rights with respect to the placement of additional wells on the premises.

During the closing, Bayer did not ask about the quit claim deed. Bayer testified she assumed SPD obtained a quit claim deed from June Whetstone based on the language of the general warranty deed. Bayer was given a packet of papers at the closing. Bayer did not review the papers in the packet after the closing. The general warranty deed was recorded on May 19, 2006.

{¶17} On July 6, 2006, June Whetstone passed away. Her obituary was in the local paper on July 9, 2006. Bayer was aware of her passing.

{¶18}  After June Whetstone passed away, SPD began receiving royalties based on the oil and gas lease.

{¶19} In 2012, Bayer discovered that SPD had not obtained a quit claim deed from June Whetstone. By that time, SPD had received approximately $97,102.32 in royalties.

{¶20} On June 12, 2012, Bayer filed a complaint against SPD in the Fairfield County Court of Common Pleas. In her complaint, she alleged claims for breach of contract, fraud, unjust enrichment, conversion, declaratory judgment, quiet title, and other relief, including but not limited to, punitive damages, attorney's fees, and interest. Bayer argued SPD breached the purchase contract by failing to obtain a quit claim deed from June Whetstone before receiving the royalties from the oil and gas lease. Because SPD did not obtain a quit claim deed, Bayer asserted she was entitled to receive the royalties from the oil and gas lease when the life estate of June Whetstone terminated. SPD brought a third-party complaint against Anderson & Co. Realtors, LLC.

{¶21} After the trial court denied SPD's motion for summary judgment, the matter came before the trial court upon a bench trial. The trial court issued its judgment on February 19, 2015. The trial court determined SPD did not breach the purchase contract by failing to obtain a quit claim deed from June Whetstone and Bayer was not entitled to receive any royalties under the terms of the purchase contract.

## ASSIGNMENTS OF ERROR

{¶22} Bayer raises three Assignments of Error:

{¶23} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO APPLY STANDARD OF RULES OF CONSTRUCTION AND CONTRACT LAW IN INTERPRETING THE ROYALTY AND MINERAL RIGHTS PROVISION OF THE REAL ESTATE CONTRACT AT ISSUE RESULTING IN AN ERRONEOUS AND UNSUPPORTABLE DECISION.

{¶24} "II. THE TRIAL COURT ERRED IN NOT FINDING AS A MATTER OF LAW THAT APPELLANT BAYER WAS ENTITLED TO ALL ROYALTIES AS OF THE DEATH OF JUNE WHETSTONE AS NO REMAINDER, VESTED OR CONTINGENT, HAD EVER BEEN CREATED IN THE CHAIN OF TITLE.

{¶25} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS DISPOSITION OF APPELLANTS' CLAIMS UNDER THEORIES OF UNJUST ENRICHMENT, CONVERSION, DECLARATORY JUDGMENT AND QUIET TITLE AS A RESULT OF ITS ERRONEOUS INTERPRETATION OF THE CONTRACT."

## ANALYSIS

### *Standard of Review*

{¶26} Bayer asks this Court to reverse the February 19, 2015 judgment entry of the trial court. The February 19, 2015 judgment entry determines matters of law and fact based on the bench trial held in this case.

{¶27} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Peterson v. Peterson*, 5th Dist. No. CT2003–0049, 2004-Ohio-4714, 2004 WL 1969135, ¶ 10, citing *Cross Truck v. Jeffries*, 5th Dist. No. CA–5758, 1982 WL 2911 (Feb. 10, 1982). Questions of law are reviewed by the court de novo. *Erie Ins. Co. v. Paradise*, 5th Dist. No. 2008CA00084, 2009-Ohio-4005, 2009 WL 2457649, ¶ 12.

{¶28} In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. *SST Bearing Corp. v. Twin City Fan Companies, Ltd.*, 1st Dist. No. C110611, 2012-Ohio-2490, 2012 WL 2053315, ¶ 16. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), is also applicable in civil cases. *Eastley*, at ¶ 17–19. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered."

*Eastley*, at ¶ 20 quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001); *See also Sheet Metal Workers Local Union No. 33 v. Sutton*, 5th Dist No. 2011CA00262, 2012-Ohio-3549, 2012 WL 3200846 citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶29} "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley*, at ¶ 19.

{¶30} In the case of contracts, deeds, or other written instruments, the construction of the writing is a matter of law, which is reviewed de novo. *See, Martin v. Lake Mohawk Property Owner's Ass'n*, 5th Dist. No. 04 CA 815, 2005-Ohio-7062, 2005 WL 3610352, ¶ 23, citing *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576, 697 N.E.2d 208 (1998). Under a de novo review, an appellate court may interpret the language of the contract substituting its interpretation for that of the trial court. *Witte v. Protek Ltd.*, 5th Dist. No. 2009CA00230, 2010-Ohio-1193, 2010 WL 1076070, ¶ 6, citing *Children's Medical Center v. Ward*, 87 Ohio App.3d 504, 622 N.E.2d 692 (1993).

### SPD's Future Interest in the Oil and Gas Royalties

{¶31} We first address Bayer's second Assignment of Error because it raises an element essential to the case. June Whetstone created a life estate in the mineral rights to the Property. The September 27, 2000 general warranty deed conveying the Property from June Whetstone to Donna L. Stevenson stated:

Reserving unto the Grantor [June Whetstone], any and all interest to the mineral rights of the above described property for the remainder of the Grantor's lifetime.

June Whetstone did not name a remainderman in the language of the life estate.

{¶32} Bayer argues in her second Assignment of Error that at the time SPD entered into the purchase agreement and sold the Property, it had no legal interest in the royalties from the oil and gas lease because June Whetstone was the owner of the oil and gas royalties based on her life estate; therefore, SPD could not reserve the royalties in the purchase contract or the general warranty deed. When June Whetstone passed away and her life estate for the royalties from the oil and gas lease terminated, there was no remainderman. Bayer argues the termination of the life estate caused the interest in the royalties to merge with Bayer's rights as the current owner of the Property.

{¶33} Bayer contends that while SPD attempted to reserve the rights to royalties from the oil and gas lease, it could not do so because it had no legal interest to the royalties because June Whetstone held the life estate in the mineral rights. In *Mong v. Kovach Holdings, LLC*, 7th Dist. Trumbull No. 2012-T-0063, 2013-Ohio-882, the owner of a property attempted to reserve the oil and gas royalties when he sold the property. In August 2009, McMenamin conveyed real estate in Trumbull County to Mong. The general warranty deed contained a reservation, "Grantor [McMenamin] herein reserves the oil and gas royalties for the duration of her natural life, but for a term not to exceed 10 years from the date hereof." *Id.* at ¶ 6. The minerals on the property were subject to an oil and gas lease. Mong then sold the property to Kovach Holdings. In the purchase contract, the following language was handwritten onto the purchase agreement, "Gas + oil Royalty

Reserved by Present owner." *Id.* The general warranty deed did not contain any language reserving the oil and gas royalties. *Id.* Mong brought a cause of action for reformation, arguing the deed did not conform to the written terms of the purchase agreement which was a reservation of the oil and gas royalties to Mong, the present owner. *Id.* Kovach Holdings argued it purchased the property because it included the mineral rights. *Id.* at ¶ 10.

{¶34} The Eleventh District Court of Appeals was asked to determine whether there was a mutual mistake of fact as to the parties' understanding of whom was the "present owner." In doing so, the court had to consider whether Mong was permitted to transfer the oil and gas royalties. The court held:

> Contrary to Mong's position, the contract of sale does not express an intent contrary to the terms of the warranty deed. The contract provides that oil and gas royalties were to be reserved by "the present owner." The deed provides that the property is subject to "conditions and restrictions of record." The only valid condition and/or restriction of record is the following reservation contained in the warranty deed conveying the property from McMenamin to Mong: "Grantor [McMenamin] herein reserves the oil and gas royalties for the duration of her natural life, but for a term not to exceed 10 years from the date hereof [August 4, 2009]." At the time Mong and Kovach Holdings entered into the sales contract, McMenamin, not Mong, was "the present owner" of the oil and gas royalties. Mong's interest in these royalties was a future interest, albeit an alienable one. *See First Natl. Bank of Cincinnati v. Tenney,* 165 Ohio St. 513, 519, 138 N.E.2d 15 (1956) ("[a]

vested remainder is an actual estate and, by the rules of the common law,

is susceptible of a sale and transfer of title") (citation omitted).

*Id.* at ¶ 24.

{¶35}  The facts of the present case are almost identical to the facts of *Mong*. At the time SPD and Bayer entered into the purchase contract, June Whetstone was the owner of the oil and gas royalties pursuant to her life estate. SPD's interest in the oil and gas royalties, as the current owner of the Property at the time of the purchase contract, was a future interest and an alienable interest.

{¶36} Bayer's second Assignment of Error is overruled.

### Did SPD Breach the Purchase Contract?

{¶37} Bayer argues in her first Assignment of Error that the trial court erred when it found SPD did not breach the purchase contract by failing to obtain a quit claim deed from June Whetstone as to the oil and gas royalties. There is no dispute SPD and Bayer entered into a contract to purchase the Property. The issue in this case is whether, under the terms of the purchase contract, SPD was required to obtain a quit claim deed from June Whetstone in order to keep the oil and gas royalties when the life estate terminated. In order to determine whether there was a breach of contract, we must interpret the terms of the contract. When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. *Gen. Elec. Capital Corp. v. Tartan Fields Golf Club, Ltd.,* 5th Dist. Delaware No., 2013-Ohio-4875, 1 N.E.3d 463, ¶ 19 citing *Westfield Ins. Group v. Affinia Dev., L.L.C.,* 2012-Ohio-5348, 982 N.E.2d 132, ¶ 21 (5th Dist.). We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning

of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Sunoco, Inc. (R & M) v. Toledo Edison, Co.,* 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37 citing *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶38} In order to prove a claim for breach of contract by SPD, Bayer had to show: 1) the existence of a contract; 2) performance by the plaintiff; 3) nonperformance by the defendant; and 4) damages as a result. *Textron Fin. Corp. v. Nationwide Mutual Insurance Co.,* 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th Dist.1996), citing *Garofalo v. Chicago Title Insurance Co.,* 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995). A plaintiff must prove the elements of a breach of contract by a preponderance of the evidence. *Cooper & Pachell v. Haslage,* 142 Ohio App.3d 704, 707, 756 N.E.2d 1248 (9th Dist.2001).

{¶39} On May 2, 2006, Bayer signed the April 28, 2006 counter offer drafted by SPD. The terms of the April 28, 2006 counter offer stated:

1. Purchase Price to be $107,000

2. Buyer to be granted all rights associated with oil and gas lease including

free gas per Geopetro regulations.

3. Seller to retain all royalties associated with oil-gas lease with Geopetro.

Bayer signed her initials to the first provision that stated the purchase price was $107,000. Bayer did not initial or cross out the second and third provisions.

{¶40} On May 2, 2006, SPD signed the April 30, 2006 counter offer drafted by Bayer. The terms of the April 30, 2006 counter offer were:

1. Purchase price to be $96,500

2. Buyer to be granted all rights associated with oil & gas lease including free gas per Geopetro regulations.

3. If the royalties are [quit] claimed from Mrs. Whetstone (current holder of royalties per agent) over to the development group (South Pleasant Development Group, LLC) upon the disolvement [sic] of the group all royalties to revert back to the buyer.

SPD struck out the first provision stating the purchase price was $96,500. SPD and Bayer initialed the strike-through. SPD and Bayer did not initial or cross out the second and third provisions.

{¶41} The April 28th and April 30th counter offers state different sale prices for the Property. SPD struck out the sale price in the April 30th counter offer and Bayer initialed the strike-through. The parties agreed the sale price was $107,000. The second provision giving Bayer the rights associated with the oil and gas lease including the free gas was the same in both the April 28th and April 30th counter offers. The second provision was not struck through or initialed by the parties. Bayer received free gas from Geopetro after she purchased the Property.

{¶42} The third provision of the April 28th counter offer states that SPD was to retain all royalties associated with oil-gas lease with Geopetro. The third provision of the April 30th counter offer states that if the royalties were quit claimed from June Whetstone to SPD, upon the dissolution of SPD, all royalties were to revert back to Bayer. Bayer nor

SPD struck through or initialed one of the versions of the third provision. A representative from SPD testified at trial that it had no intention of selling the Property without retaining the rights to the oil and gas royalties. Bayer testified she had no expectation of receiving the oil and gas royalties until the dissolution of SPD. Her expectation, however, was based on her belief that SPD had obtained a quit claim deed from June Whetstone.

{¶43} Bayer argues the April 30th counter offer creates a condition precedent for SPD's rights to the oil and gas royalties. She states the contracts are to be read as follows: If June Whetstone quit claimed her ownership of the oil and gas royalties to SPD, SPD would retain the royalties after closing and Bayer would not succeed to those rights until the dissolution of SPD. If SPD did not obtain a quit claim deed from June Whetstone, Bayer would receive all rights to the oil and gas lease, including the royalties, after the termination of the life estate.

{¶44} The trial court interpreted the language of the April 28th and April 30th counter offers and found there was no conflict between the third provisions. It held the two counter offers formed the purchase agreement for the Property. The trial court held in its February 19, 2015 judgment entry:

> Provision 3 in Counteroffer 1 provides that SPD is to retain the royalty rights.
> 
> Provision 3 in Counteroffer 2 provides that Ms. Bayer is to receive royalty payments upon SPD's dissolution if SPD causes [June Whetstone] to execute a QCD in SPD's favor. Thus, when read together, SPD unambiguously receives the right to receive royalty payments; however, if a QCD of royalty rights is executed, Ms. Bayer will then receive the payments upon dissolution.

{¶45} Looking to the plain and ordinary language of the April 28th and April 30th counter offers, we agree with the trial court's interpretation of the language of the counter offers that formed the contract to purchase the Property. The April 28th contract unambiguously states that SPD was to retain all oil and gas royalties. The April 30th contract unambiguously states that if SPD obtains a quit claim deed from June Whetstone as to the royalty rights, the royalties would revert to Bayer upon the dissolution of SPD. There is no language in the April 28th or April 30th contract creating a condition precedent that required SPD to obtain a quit claim deed from June Whetstone in order for it to retain its rights to the royalties after the termination of the life estate. The April 30th contract simply states that if SPD obtains a quit claim deed from June Whetstone, Bayer will receive the royalties upon the dissolution of SPD. The general warranty deed reflects the language of the April 28th and April 30th contracts.

{¶46} The preponderance of the evidence in the case supports the trial court's conclusion. Bayer is a licensed appraiser and realtor. She testified that as a realtor, she understood real estate contracts and documents. Bayer argues the April 28th contract was not part of the final agreement because while she initialed the price term of $107,000, she did not initial the second and third provisions of the April 28th contract. We find this argument to be disingenuous because if we agree with Bayer that the failure to initial a provision deems the provision unenforceable, Bayer's ultimate argument as to the enforceability of the third provision of the April 30th contract must fail because Bayer and SPD did not initial that provision. Bayer also argues the April 28th contract is unenforceable because she did not sign the April 28th contract on May 2, 2006. SPD

signed the April 28th contract on May 2, 2006 and Bayer placed her initials by the price term of $107,000.

{¶47} We agree with the trial court's determination that the April 28th contract and the April 30th contract formed the purchase agreement between Bayer and SPD for the purchase of the Property. Read together, the unambiguous language of the contracts states that SPD was to retain the royalties to the oil and gas lease until its dissolution, upon which time the royalties would revert to Bayer. The language of the general warranty deed reflects the language of the purchase contracts. Accordingly, there was no breach of contract by SPD as to the oil and gas royalties.

{¶48} Bayer's first Assignment of Error is overruled.

### Bayer's Remaining Claims

{¶49} Bayer argues in her third Assignment of Error that the trial court erred by finding in favor of SPD on her claims for unjust enrichment, conversion, declaratory judgment, and quiet title. Bayer contends the trial court's conclusion was based on its erroneous determination that SPD did not breach the purchase agreement.

{¶50} We found above that we agreed with the trial court's conclusion that SPD did not breach the purchase agreement. Accordingly, we affirm the trial court's decision that SPD was entitled to judgment as to Bayer's remaining claims.

{¶51} Bayer's third Assignment of Error is overruled.

## CONCLUSION

{¶52} The judgment of the Fairfield County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Baldwin, J., concur.